IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHANE SIANTOU, | § | |
| | § | |
| *Plaintiff,* | § | 5:24-CV-00721-OLG-RBF |
| | § | |
| vs. | § | |
| | § | |
| SAFECO INSURANCE COMPANY OF | § | |
| AMERICA, D/B/A AND A/K/A | § | |
| AMERICAN ECONOMY INSURANCE | § | |
| COMPANY; | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant AEIC's Motion to Dismiss. *See* Dkt. No. 21 ("Mot."); *see also* Dkt. Nos. 23 ("Response"), 25 ("Reply"). All pretrial matters in this action have been referred for disposition, pursuant to Rule CV-72 and Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 4. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, Defendant AEIC's Motion to Dismiss, Dkt. No. 21, should be **GRANTED IN PART** and **DENIED IN PART**, as discussed further below.

**Factual and Procedural Background**

This case concerns the cancellation of Plaintiff Stephane Siantou's homeowner's insurance policy. Siantou alleges that Defendant Safeco Insurance Company of America d/b/a and a/k/a

American Economic Insurance Company ("Defendant" or "AEIC")[1] failed to notify Siantou that the insurance premiums for his insurance policy weren't being funded, which led to the policy's cancellation.

According to the Third Amended Complaint, which is the live complaint, Siantou purchased a home in San Antonio, Texas (hereinafter referred to as "the Property"), in January of 2022. Dkt. No. 20 ("3d Am. Compl.") at 6, ¶ 5.01; Mot. at 7. Siantou obtained a mortgage with North American Savings Bank ("North American") in connection with the purchase. 3d Am. Compl. at 6, ¶ 5.01. Defendant AEIC issued a homeowner's insurance policy to Siantou for the Property through Siantou's insurance agent, NSure Insurance Services, Inc. ("NSure"). *Id.* at 6, ¶ 5.02; Mot. at 7.

As part of the agreement between Siantou and Siantou's mortgage lender, North American, Siantou was required to fund an escrow account, which North American would then use to pay, among other things, the homeowner's insurance premiums owed to AEIC. 3d Am. Compl. at 6, ¶ 5.04; Mot. at 8. In aid of this arrangement, Siantou's insurance agent, NSure, allegedly notified AEIC that Siantou had selected "bill lender" as the payment method for the policy, meaning Siantou chose an option whereunder lender North American would pay the policy premiums for Siantou out of Siantou's escrow funds. 3d Am. Compl. at 8, ¶ 5.13; *see also* Mot. at 8.

It is undisputed that things did not go as expected and insurance premiums owed to AEIC accrued unpaid. There's also no dispute that some of the outstanding policy premiums were sent to collections. The parties, however, dispute how the debt accrued and whose fault it was that it accrued.

---

[1] As stated in Defendant AEIC's Motion to Dismiss, Plaintiff Siantou incorrectly refers to Defendant as "Safeco" throughout the Third Amended Complaint. *See* Mot. at 1.

According to Siantou, "[i]n or about March or April 2022," lender North American sold Siantou's mortgage account to J.P. Morgan Chase ("Chase"). 3d Am. Compl. at 9, ¶ 5.17. After this transaction, Siantou claims to have continued to fully fund the escrow account but Chase, unbeknownst to Siantou, failed to pay the policy premiums owed to AEIC. *Id.* at 10, ¶¶ 5.18, 5.19. And since premiums weren't being paid, AEIC purportedly cancelled the policy and sent the total unpaid amount to collections. *Id*. at 10, ¶ 5.20.

AEIC, in contrast, claims in its Motion that North American paid the 2022 annual premium in full out of escrow funds on or about January 29, 2022. *See* Mot. at 8. Then, on March 13, 2022, AEIC says it sent Siantou a notice advising him that his policy with AEIC would be cancelled on April 16, 2022, because Siantou had an open water claim on another property that Siantou had failed to disclose to AEIC. *Id.* AEIC also sent Siantou a check totaling $1,100.33—a refund of the already paid 2022 premium from the April 16 cancellation until the end of the year. *Id.* Things then got complicated, according to AEIC.

Several weeks after AEIC sent Siantou the $1,100.33 refund check, lender NSure informed AEIC that the water claim was now closed. *Id.* So, on April 13, 2022, AEIC claims to have sent a letter to Siantou notifying him that the policy was being continued with no lapse in coverage and requesting repayment of the refunded $1,100.33 premium balance for the rest of 2022. *Id*. at 9.

According to AEIC, Siantou failed to timely repay the refunded $1,100.33 or otherwise respond to AEIC's notice. *Id.* In light of his non-repayment, AEIC cancelled the policy and notified North American and Siantou of that decision. *Id.* at 9-10. AEIC also sent Siantou a letter requesting payment of $257.22 owed outstanding premium payments, bridging the gap between the original April 16 contemplated cancellation date and the actual cancellation date that occurred some time

3

later. *Id*. at 10. Having failed to hear from Siantou, on August 9, 2022, AEIC sent the outstanding $257.22 balance to collections. *Id.* at 10.

On November 3, 2022, Siantou contacted AEIC and advised that he had never cashed the originally issued $1,100.13 refund check. *Id.* AEIC claims to have then used that $1,100.13 to satisfy the outstanding $257.22 and thereafter issued another refund check to Siantou for the remaining refund balance of $843.11. *Id*. at 10-11.

Siantou alleges that he went on an extended five-month trip overseas beginning in or about April 2022 and therefore claims that he didn't receive notice of the policy's cancellation. 3d Am. Compl. at 11, ¶ 5.25. The parties do not dispute that AEIC mailed notices of the policy's cancellation to the Property in question, rather than by sending them through email or by some other means. *Id*. at 11-12, ¶ 5.25; Mot. at 7-8. Siantou alleges, however, that at some point after AEIC issued the policy, he elected to receive "paperless communication" from AEIC. 3d Am. Compl. at 10, ¶¶ 5.20, 5.21. He also claims that it is because of AEIC's failure to communicate through the "agreed upon method of communication" that the policy was ultimately cancelled. *Id.* at 11-12, ¶ 5.25.

For its part, AEIC claims that Siantou indeed enrolled in their "Paperless *Policy* program," which allowed Siantou to receive *certain* documents electronically, namely only those pertaining to the policy, like renewals and changes. Mot. at 9 (emphasis added). Siantou did not, however, enroll in the Paperless Billing program, says AEIC, and he moreover couldn't have done so because his lender paid the premiums out of escrow. *Id.*

As a result of AEIC cancelling the policy and sending the unpaid amount to collections, Siantou alleges, he "suffered depression, anxiety," and other emotional and mental damages. 3d Am. Compl. at 12, ¶¶ 5.26, 5.27. Siantou also claims that he was subsequently unable to obtain

replacement insurance because his would-be premiums dramatically increased as a result. *Id.* at 12, ¶ 5.30.

Siantou, proceeding pro se and *in forma pauperis*, sued AEIC on June 27, 2024. *See* Dkt. Nos, 1, 2, & 5. In the Third Amended Complaint, Siantou asserts claims for breach of contract, promissory estoppel, breach of fiduciary duty, violation of the Texas Deceptive Trade Practices Act ("DTPA"), invasion of privacy, as well as negligence, gross negligence, and negligence per se. *See* 3d Am. Compl.

AEIC filed the Motion to Dismiss Plaintiff's Third Amended Complaint for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 21. Siantou timely filed a response, *see* Dkt. No. 23 ("Response"), and AEIC filed a reply, *see* Dkt. No. 25 ("Reply").

**Analysis**

Rule 12(b)(6) allows a party to move for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

In reviewing the motion, the Court must and will "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (citation and internal quotation marks omitted). The Court, however, need "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016)

5

(citing *Iqbal*, 556 U.S. at 678). The Court only considers evidence contained in the pleadings and documents attached to them, except for documents that are attached to a motion to dismiss or response that are referred to in the live complaint and are central to it. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (citing *inter alia* Fed. R. Civ. P. 12(b)(6)).

Plaintiff Siantou proceeds pro se and as such, his pleadings are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, pro se litigants must still follow the Federal Rules of Civil Procedure and "must still plead factual allegations that raise the right to relief above the speculative level." *See Chhim*, 836 F.3d at 469 (citations omitted).

Finally, in cases like this that come before the Court pursuant to the Court's diversity jurisdiction, the Court must apply state substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Baker v. RR Brink Locking Sys., Inc.*, 721 F.3d 716, 717 (5th Cir. 2013) ("Where . . . a federal court exercises jurisdiction over state law causes of action based upon diversity of citizenship, *see* 28 U.S.C. § 1332, we apply state substantive law as stated in the final decisions of the state's highest court.") (citation omitted). "When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Transcontinental Gas Pipe Line Corp. V. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). The parties appear to agree that Texas substantive law applies.

### A. Siantou Plausibly Alleges One Claim for Breach of Contract and Fails on Two Other Contract Claims.

To establish a breach of contract under Texas Law, a plaintiff must show (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach by the defendant for failure to perform, and (4) damages sustained by plaintiff due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

Insurance policies are controlled by the same rules of construction that apply to contracts generally. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740-41 (Tex. 1998) (citations omitted). Interpretation begins with the plain text, and undefined words must "be given their plain, ordinary, and generally accepted meanings absent some indication of a different intent." *U.S. Metals, Inc. v. Liberty Mut. Grp.*, 490 S.W.3d 20, 23 (Tex. 2015); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. McMurray*, 342 Fed. App'x. 956, 958-89 (5th Cir. 2009). And while the Court generally must accept all factual allegations in a plaintiff's complaint as true, *see Iqbal*, 556 U.S. at 678, the Court need not credit a plaintiff's allegations that are contradicted by documents incorporated into a party's pleading. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206-07 (5th Cir. 1975) (rejecting pleaded facts that a party entered into a contract and are thus liable stating, such an "averment . . . is contradicted and controlled by the contract . . . ") (citations omitted); *see also Optiv Sec. Inc. v. Iheartmedia Mngmt. Serv., Inc.*, 5:20-cv-01273-ESC, 2021 WL 2156410, at *5 (W.D. Tex. May 27, 2021) ("This Court need not credit allegations that are contradicted by documents incorporated into a party's pleading.") (citing *inter alia id.*).

Siantou's Third Amended Complaint appears to allege the following three breach-of-contract predicates:

- By billing Siantou rather than the lender and by "failing to ensure that Plaintiff had duly funded the escrow prior to cancelling Plaintiff's homeowner insurance," AEIC breached the terms of the insurance policy, *see* 3d Am. Compl. at 11 ¶ 5.24, 26-28 ¶¶ 8.07.08, 8.07.13;

- By billing Siantou rather than the lender, AEIC violated terms of the Closing Disclosure agreement between Siantou and the mortgage lender, *see id.* at 5 ¶ 4.04, 27 ¶ 8.07.08, and;

- By mailing notices of the policy's cancellation rather than notifying Siantou via paperless communication, AEIC breached an express agreement to communicate via paperless communication*, see id.* at 10 ¶ 5.21, at 26-27 ¶ 8.07.02.

The third of these contract-breach theories survives the Motion to Dismiss, while the other two do not.

1.    *The Court considers the insurance-policy provisions provided in AEIC's motion.* When evaluating a Rule 12(b)(6) motion, the Court is generally "cabined to the facts alleged in the complaint." *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 198 (5th Cir. 2020) (citation omitted). But "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted). A document is central to a claim if its attachment "merely assists the plaintiff in establishing the basis of the suit." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Relevant here, the Fifth Circuit has considered insurance contracts attached to 12(b)(6) motions when central to a claim. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (finding consideration of insurance contracts unattached to the complaint permissible where they were attached to the motion to dismiss, referred to in the complaint, and central to the claims).

Siantou's Third Amended Complaint repeatedly references the insurance policy issued by AEIC. *See* 3d Am. Compl. at 5, ¶ 4.04; *id.* at 27-28, ¶¶ 8.07.08, 8.07.13; *see also* Resp. at 20-22. And the contract claims against AEIC are premised on AEIC's alleged breach of the policy's terms. The Court therefore considers the policy excerpts provided in AEIC's Motion to Dismiss in conjunction with the factual allegations in Siantou's live complaint.

The relevant policy provisions provide as follows:

(4) Cancelling.

> (b) We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. *This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in*

8

> *your Policy Declarations. Proof of mailing shall be sufficient proof of notice.*
>
> > (1) *When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.*
>
> (c) When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

Mot. at 16 (emphasis added).

**2.** *Siantou pleads a viable breach claim based on the method of communication.* According to the live complaint, Siantou entered into an agreement, separate from or in addition to the insurance policy addressing communications by AEIC. Pursuant to that agreement, Siantou was to receive information from AEIC about the policy via paperless-communication methods. *See* 3d Am. Compl. at 10, ¶ 5.21.  In aid of this contention, Siantou claims that "[u]pon . . . signing up for homeowner insurance with [AEIC] in 2022, [AEIC] requested for Plaintiff to elect a method of communication," and "Plaintiff elected (in writing) 'paperless communication.'" *Id.*

Although barebones, these contentions plausibly allege an agreement with AEIC, or a modification of the existing policy agreement with AEIC, about the method of communication between the parties concerning policy matters. The requirements for a valid agreement or modification are met, at least for present purposes at the Rule 12(b)(6) stage.

As pleaded, the required elements of contract formation are met. *See Owens v. Specialized Loan Serv., L.L.C.*, 694 Fed. App'x 950, 953 (5th Cir. 2017) (stating, a valid and enforceable contract under Texas law requires: "(1) an offer; (2) an acceptance in strict compliance with terms of offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms

of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and (6) consideration[,]" and quoting *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). Siantou alleges AEIC requested that he elect a communication method, and Siantou elected paperless communication. Paperless communication, says Siantou, as the exclusive method of communication was therefore mutually agreed upon by the parties. There is little question that, presumed true, these allegations provide for mutual consideration. Both Siantou and AEIC would benefit from the paperless-communication agreement. AEIC saves money it doesn't have to spend sending hard-copy notices to Siantou. And Siantou, likewise, benefits from a more convenient and expedient method of communication. Indeed, it is likely more efficient and convenient for both parties to communicate via electronic means.

That provisions of the policy don't contemplate receiving communications electronically doesn't defeat Siantou's claim at the pleading stage because the agreement concerning the method of communication, at least based on the information before the Court, is a modification of the policy or a separate agreement entirely. AEIC, moreover, fails to provide the Court with the full policy terms, and mentions no merger clause or other possible impediment to such a later agreement or modification. Further, AEIC's descriptions of its paperless communications policy provided in the Motion are not properly before the Court. AEIC hasn't provided the Court with evidence to support its descriptions of the paperless policy. And it's not clear that the Court could consider such evidence at this stage, especially since the Court doesn't have the evidence before it to evaluate whether or not it would properly be considered with a Rule 12(b)(6) motion. AEIC would have been better served by raising its arguments, supported by evidence, in a motion for summary judgment.

10

**3.**    *The Policy contemplates billing Siantou directly.* Siantou fails to state a viable claim via allegations that under the policy "the lender was legally the party responsible for paying the insured homeowner's insurance bills out of an escrow funded by Plaintiff." *See* 3d Am. Compl. at 27, ¶ 8.07.08 (emphasis removed). The policy's provisions plainly advise Siantou that "[w]hen *you* have not paid the premiums, we may cancel at any time by notifying *you* at least 10 days before the date cancellation takes effect." *See* Mot. at 16 (emphasis added). The policy therefore plainly indicates Siantou was responsible for ensuring, likely via his lender, that premiums were paid, and it contemplates that in the event of a policy cancellation, Siantou—not his lender—would receive notice of cancellation. It makes little sense, moreover, that an insurance company would obligate itself, in an agreement with a policyholder, to ensure that another party paid premiums for the policyholder to the insurance company. This claim fails.

**4.**    *AIEC is not party to the agreement between Siantou and the lender.* No viable claim is stated via allegations that AEIC somehow breached the agreement between Siantou and the lender. Siantou pleads no facts indicating that AEIC was somehow bound to the agreement between Siantou and the lender. A party typically can't breach a contract to which it is not a party. And Siantou cannot maintain a breach of contract claim against an entity not a party to the contract he claims was breached. *See Mission Grove, LP v. Hall*, 503 S.W.3d 546, 551-52 (Tex. App.— Houston [14th Dist.] 2016, no pet.) (Generally, "a suit for breach of contract may not be maintained against a person who is not a party to the contract[.]"). This claim fails.

**B.    A Claim for Promissory Estoppel Survives.**

Under Texas law, "[t]he requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983) (citation omitted); *see*

*also Metro. Life Ins. Co. v. Haden & Co.*, 158 F.3d 584, 584, 1998 WL 648603, at \*4 (5th Cir. 1998).

Siantou's Third Amended Complaint includes the following allegations pertinent to his promissory estoppel claim:

> [AEIC] promised Plaintiff that it would communicate with Plaintiff through the agreed method of communication, namely "paperless communication[.]"
>
> [AEIC] promised Plaintiff . . . by giving him the option of selecting "Bill Lender", that, billing issues . . . would be resolved with the lender[] as the party responsible for paying Plaintiff's homeowner insurance bills . . . .
>
> [AEIC] promised Plaintiff . . . that it would abide by the provisions governing Plaintiff's mortgage, including binding Federal regulations (including 12 CFR § 1024.17(k) and 12 CFR § 1026.38) which held that the lender was legally the party responsible for paying the insured homeowners insurance bills out of escrow funded by Plaintiff, and including the Closing Disclosure . . . .
>
> [AEIC] promised Plaintiff . . . that it would abide by all provisions surrounding Plaintiff's homeowner insurance with [AEIC].

3d Am. Compl. at 14-15, ¶ 8.01.03 (emphasis removed).

Insurance policies are controlled by the same rules of construction that apply to contracts generally. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740-41 (Tex. 1998) (citations omitted). "[F]or many years, Texas courts have held that promissory estoppel becomes available to a claimant only in the *absence* of a valid and enforceable contract." *Tremble v. Wells Fargo Home Mortg., Inc.*, 478 Fed. Appx. 164, 166 (5th Cir. 2012) (quoting *Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.,* 154 S.W.3d 634, 636 (Tex. App.—Houston [14th Dist.] 2004, pet. abated) (collecting cases)) (emphasis in original). "Under Texas law, a contract comprising the disputed promise precludes recovery under promissory estoppel." *Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 (5th Cir. 1990).

Much of Siantou's effort to plead claims under a promissory estoppel theory comes up short. The policy is a valid contract and is therefore governed by Texas contract law. AEIC's

12

purported promise to abide by provisions of the policy, for example, is thus properly brought in a breach of contract action. Promissory estoppel on this basis is unavailable. But other aspects of the promissory estoppel arguments fare better for Siantou at this early stage of the proceedings.

The promise to communicate via paperless methods, if not itself a valid contract, likely could support a claim for promissory estoppel at this early stage in the case. Promissory estoppel "may apply when there is a promise that the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise." *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997) (citation omitted). To state a claim for promissory estoppel, "[t]he asserted 'promise' must be sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action." *Eaton v. Mazanec Constr. Co.*, Nos. 10:21-cv-00107, 10:21-cv-00111, 2022 WL 7211332, at *19 (Tex. App.—Waco Oct. 12, 2022, no pet.) (mem. op.) (citation omitted); *see also Highland Cap. Mgmt., L.P. v. Bank of Am., Nat'l Ass'n*, No. 3:10-cv-1632-L, 2011 WL 5428779, at *8 (N.D. Tex. Nov. 7, 2011) (stating that plaintiff failed to assert the presence of a "clear and unambiguous promise"), *aff'd in part, rev'd in part and remanded on other grounds*, 698 F.3d 202 (5th Cir. 2012).

First, the Court disagrees with AEIC that Siantou fails to plead with sufficient specificity how and when AEIC promised to communicate through "paperless communication" pertaining to billing and the policy's cancellation, as well as what action or forbearance AEIC's alleged promise induced Siantou to make. *See* Mot at 18-19. Siantou states that he "elected (in writing) 'paperless communication'" as the means of communication between Siantou and AEIC. 3d Am. Compl. at

13

10, ¶ 5.21. Without more details about the paperless policy, which surely AEIC is in possession of, no further conclusions can be drawn.

Siantou alleges that AEIC "promised . . . that it would communicate with Plaintiff through . . . 'paperless communication'" and "promised that . . . billing issues . . . would be resolved with the lender." *See id.* at 14-15, ¶ 8.01.03 (emphasis removed). The Court agrees with AEIC that provisions of the policy, properly incorporated into Siantou's pleading, are in tension with Siantou's allegations that AEIC promised to communicate via paperless methods with Siantou on all relevant topics. But the Court can't reach a conclusion on this issue without more information from AEIC about the alleged paperless-communication agreement or understanding it had with Siantou. The policy's terms, for example, advised Siantou that a cancellation notification "may be delivered to *you*, or mailed to *you* at *your* mailing address shown in your Policy Declarations" and that "[p]roof of mailing shall be sufficient proof of notice." Mot. at 16 (emphasis added). But these terms don't rule out sending cancellation notice some other way than by mail, or rule out a subsequent promise or agreement to send such notice another way. The policy also informed Siantou that "[w]hen you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date of cancellation takes effect." *Id.* Again, this provision isn't necessarily inconsistent with a subsequent agreement to send notice by email, or even a subsequent agreement to send notice *also* by email as well as in the mail.

As for reliance on the alleged promise, Siantou's Third Amended Complaint states that "[i]n or about April 2022, [he] went on a long trip oversees that lasted for approximately five months." *See* 3d Am. Compl. at 11, ¶ 5.25. This allegation supports the reasonable inference that Siantou expected he could access communication from AEIC electronically and that his

expectation was thwarted.  Although some of Siantou's claims for promissory estoppel should be dismissed, he states at least one viable claim.

### C.        Siantou Fails to Plausibly Allege the Existence of a Fiduciary Duty.

To recover for breach of fiduciary duty under Texas law, a party must show the existence of a fiduciary duty, breach, causation, and damages. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (citations omitted). "Texas law recognizes two types of fiduciary relationships[:]" formal and informal. *Navigant Consulting, Inc. v. Wilkinson,* 508 F.3d 277, 283 (5th Cir. 2007); *see also Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 95-96 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Siantou makes a claim for breach of fiduciary duty, alleging that there was "both a formal and an informal fiduciary relationship between [Siantou] and [AEIC], as [Siantou's] homeowner insurer." 3d Am. Compl. at 17, ¶ 8.02.03. Siantou claims that a fiduciary duty exists because AEIC "had a duty to act in the best of interest of [Siantou's] home . . . and in the best interest of Siantou." *Id.* at 17, ¶ 8.02.04. Siantou claims that AEIC breached its duty in two respects: (1) failing to make a sufficient effort to contact Siantou or NSure, the insurance agent, before cancelling Siantou's insurance and (2) cancelling Siantou's homeowner insurance. *See id.* at 17, ¶ 8.02.07. AEIC argues that Siantou's claim for breach of fiduciary duty fails because there is no fiduciary relationship between the parties. Mot. at 9-10.

A formal fiduciary relationship exists in "certain formal relationships, including attorney-client, partnership, and trustee relationships." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (citation omitted); *see also Navigant Consulting, Inc.*, 508 F.3d at 283 (citation omitted). Siantou pleads no facts to support the existence of a formal fiduciary relationship. *See* 3d Am. Compl. at 17, ¶ 8.02.03. Indeed he couldn't have so alleged because, consistent with the underlying standards

15

and policy governing such relationships, Texas courts have repeatedly held that no general fiduciary duty exists between an insurer and an insured. *See e.g.*, *Wayne Duddlesten, Inc.*, 110 S.W.3d at 96; *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 678-79 (Tex. App.—Fort Worth 2010, no pet.) ("An insurer does not generally have a fiduciary duty toward its insured.") (citations omitted); *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 565 (Tex. App.—Dallas 1990, writ denied) ("[Plaintiff] has not cited, and we have not found, any Texas authority recognizing the existence of a fiduciary relationship between an insured and his or her insurer.").

As to an informal fiduciary relationship, the Texas Supreme Court has stated that it "is impossible to give a definition of the term ['fiduciary'] that is comprehensive enough to cover all cases" where an informal relationship creates the duty. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002) (quotation and citation omitted). Nonetheless, Texas courts have made clear that "a fiduciary relationship is an extraordinary one and will not be created lightly." *Smith v. Deneve*, 285 S.W.3d 904, 911 (Tex. App.—Dallas 2009, no pet.) (citation omitted). Generally speaking, informal relationships impose a fiduciary duty "where the existence of confidence and trust imposes greater duties as a matter of law." *Wayne Duddlesten, Inc*, 110 S.W.3d at 96 (citations omitted). But "mere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). To impose a fiduciary duty arising out of a business transaction, the relationship "must exist prior to, and apart from, the agreement made the basis of the suit." *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995) (citation omitted).

Siantou's Third Amended Complaint is devoid of any pleaded allegations that suggest a relationship existed between the parties prior to the interaction and relationship providing the basis of this suit. Siantou alleges that a special relationship was created based on "repeated promises

and commitments" including to bill the policy's premiums to the lender and to communicate with Plaintiff Siantou via paperless communication. *See* Response at 13. Even taken as true, these allegations fail to support the existence of a fiduciary relationship because they are not "prior to, and apart from, the agreement made the basis of the suit." *See Transport Ins. Co.*, 898 S.W.2d at 280; *see also Wayne Duddlesten*, 110 S.W.3d at 96 (holding that the plaintiff didn't allege facts demonstrating that an informal, confidential relationship existed between the parties formed prior to and apart from the insurance contract). The terms of the insurance policy, the alleged agreement to communicate via paperless communication, and the Closing Disclosure between Siantou and the lender are indeed the very basis of this suit. *See* 3d Am. Compl. Siantou's allegations therefore amount to legal conclusions that are insufficient to satisfy applicable pleading standards. *See Iqbal*, 556 U.S. at 664 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

Accordingly, Siantou's claims for breach of fiduciary duty should be dismissed.

### D.    Siantou's DTPA Claim Fails as Pleaded.

Siantou alleges, as the sole ground for a DTPA claim, that AEIC engaged in an "unconscionable act." This DTPA claim fails. Siantou fails to allege any facts to indicate that the purportedly unconscionable acts "relate[s] to the alleged transaction itself, not 'post-transaction conduct,'" *see Huynh v. Walmart Inc.,* 30 F.4th 448, 454 (5th Cir. 2022) (quoting *Charlie Thomas Chevrolet, Ltd. v. Martinez*, 590 S.W.3d 9, 19 (Tex. App.—Houston [1st Dist.] 2019, no pet.)), or that AEIC took advantage of his lack of "knowledge, ability, experience, or capacity [ ] to a grossly unfair degree." *see* Tex. Bus. & Com. Code § 17.45(5) (defining "unconscionable action or course of action").

**1.** *The Rule 9(b) pleading standard may or may not apply to the DTPA claim.*
AEIC contends that Siantou's DTPA claim should be dismissed for failure to comply with Rule 9(b), which in relevant part provides: "[i]n alleging fraud or mistake, a party must state with *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added); *see also* Mot. at 20-21. Some district courts in this Circuit have applied the stringent Rule 9(b) pleading requirements to all DTPA claims. *See e.g.*, *Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 742 (S.D. Tex. 1998) ("Claims alleging violations of the Texas Insurance Code and the DTPA . . . are subject to the requirements of Rule 9(b)") (citation omitted); *see also e.g., Patel v. Holiday Hosp. Franchising, Inc.*, 172 F.Supp.2d 821, 825 (N.D. Tex. 2001) ("Claims alleging violations of the DTPA are subject to the requirements of Rule 9(b)") (citations omitted). While other courts have applied the Rule 9(b) pleading standard to DTPA claims only where the DTPA claims "depend on the same set of facts that support a fraud claim." *See e.g.*, *Bauer v. AGCO Corp.*, 770 F.Supp.3d 957, 964 (W.D. Tex. 2025) (declining to apply Rule 9(b) where plaintiff does not allege fraud and rather alleges breach of an express warranty) (citation omitted); *see also e.g.*, *Ranzy v. Extra Cash of Tex., Inc.*, No. 4:09-cv-03334, 2011 WL 6719881, at *4-5 (S.D. Tex. Dec. 21, 2011) ("There are cases that have applied Rule 9(b)'s heightened specificity requirements to claims under the DTPA, but in those cases the underlying claims involved fraud."). It doesn't appear that the Fifth Circuit has spoken on the issue.

The Court need not determine whether the more stringent pleading requirements required by Rule 9(b) apply because AEIC alternatively argues, and the Court agrees, that Siantou's DTPA claim fails to meet the requirements of Rule 8(a) because it includes "nothing more than legal conclusions unsupported by any factual underpinning." Mot. at 20-21.

18

**2.** *Siantou pleads no facts to indicate that AEIC engaged in an "unconscionable action."* A plaintiff asserting a claim under the DTPA must prove that "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 478 (Tex. 1995); *see also* Tex. Bus. & Com. Code § 17.50(a)(1). Under the DTPA, an unconscionable action is defined as, "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5). To prove an unconscionable action or course of conduct, a plaintiff must show that the defendant "took advantage of [the plaintiff's] lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Ins. Co. of N. Am*, 981 S.W.2d at 677 (citation and internal quotation marks omitted). The Fifth Circuit has made clear that allegations of "unconscionability must relate to the alleged transaction itself, not 'post-transaction conduct[.]'" *Huynh*, 30 F.4th at 454 (quoting *Charlie Thomas Chevrolet, Ltd.*, 590 S.W.3d at 19). Moreover, a plaintiff must allege an act or practice that could have resulted in liability even in the absence of a contract between the parties. *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016) (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996) (per curiam)).

Read liberally, Siantou appears to allege unconscionability as to AEIC's mailing to Siantou notice of the policy's cancellation rather than notifying him through paperless communication, as well as AEIC's seeking repayment from Siantou rather than from the lender. 3d Am. Compl. at 19, ¶ 8.03.04; *see also* Response at 14-15. But allegations of unconscionability based on AEIC "ma[king] and ignore[ing] its own promises," *see* Response at 14-15, amount to a breach of contract claim and do not support a claim for unconscionable conduct. *See Shakeri*, 816 F.3d at

295 (affirming dismissal of an unconscionable conduct claim because "the claim for unconscionable conduct 'amounts to a breach of contract claim'").

Even assuming Siantou's allegations are properly considered under the DTPA, Siantou pleads no facts to demonstrate that AEIC "[took] advantage of [his] lack of knowledge, ability, experience, or capacity . . . to a grossly unfair degree." *See* Tex. Bus. & Com. Code § 17.45(5) (defining "unconscionable action or course of action). The allegations provided by Siantou "do not permit the court to infer more than the mere possibility of misconduct" and, therefore, Siantou "has not shown [ ] that [he] is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted) (citing Fed. R. Civ. P. 8(a)(2)). Accordingly, Siantou pleads no viable DTPA claim.

**E.      Siantou's Claims of Negligence, Gross Negligence, and Nelgigence Per Se Fail.**

To establish a claim for common law negligence, a plaintiff must establish that the Defendant (1) owed him a duty, (2) which it breached, and (3) Plaintiff suffered damages that were proximately caused by breach of that duty. *FDIC v. Ernst & Young*, 967 F.2d 166, 170 (5th Cir. 1992) (citing *inter alia Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 376 (Tex. 1984)). Whether a "legally cognizable duty" exists is a question of law and is a prerequisite to a negligence claim. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (citation omitted).

To recover for gross negligence under Texas law, a plaintiff must satisfy the elements of an ordinary negligence claim and also must demonstrate the two additional elements of gross negligence by clear and convincing evidence. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (citing Tex. Civ. Prac. & Rem. § 41.003(b)). For those two additional elements, a plaintiff must first establish that the act or omission of the defendant involved an extreme degree of risk. Tex. Civ. Prac. & Rem. § 41.001(11)(A); *see also Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 784-86 (Tex. 2001). A plaintiff must then establish that the defendant had "actual, subjective awareness of the risk involved, but nevertheless proceed[ed] with conscious

20

indifference to the rights, safety, or welfare of others." Tex. Civ. Prac. & Rem. § 41.001(11)(B); *see also Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994).

   **1.** *Texas law does not recognize first-party negligence based on violations of an insurance policy.* Siantou's claims for negligence are based on AEIC's purported violations of the policy as well as various statutes and regulations. As to the policy violations, while Texas law imposes "a duty on the part of the insurer to deal fairly and in good faith with an insured[,] . . . there is no duty beyond the contract itself." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459-60 (5th Cir. 1997) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987)). For a tort duty to arise out of a contractual duty—*i.e.*, for there to be a claim for negligent failure to perform a contract—the liability must arise "independent of the fact that a contract exists between the parties." *Higginbotham,* 103 F.3d at 460 (quoting *United Serv. Auto. Assn. v. Pennington,* 810 S.W.2d 777, 783 (Tex. App.—San Antonio 1991, writ denied)). Put simply, where an insurer's allegedly negligent conduct is based on a breach of contract theory, as is the case with Siantou's allegations, the insured's claim is properly brought under a theory of breach of contract.

  Any claims for negligence must be separate and apart from the parties' contract. Siantou's Third Amended Complaint is devoid of facts to support a negligence claim "independent of the fact that a contract exists between the parties." *See id.* (quoting *United Serv. Auto. Assn.,* 810 S.W.2d at 783). The negligence and gross negligence claims fail.

   **2.** *Siantou fails to adequately allege that AEIC breached its duty of good faith and fair dealing.* The Texas Supreme Court has stated that "in an insurance context, the duty of good faith and fair dealing arises only when there is a contract giving rise to a 'special relationship.'" *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697-98 (Tex. 1994) (emphasis

removed). The Texas Supreme Court has invoked this duty under very limited circumstances: "when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay." *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 566 (Tex. 1990) (citation omitted).

Siantou alleges that AEIC violated the duty of good faith and fair dealing by failing to contact him via paperless communications and by contacting Siantou directly, rather than contacting his insurance agent and lender, regarding the failure to pay his premiums. 3d Am. Compl. at 21, ¶ 8.04.08. The Court declines to recognize that such allegations satisfy the Texas Supreme Court's rigorous standard. As such, Siantou has failed to plausibly claim that AEIC breached the duty of good faith and fair dealing.

> **3.**     *Siantou fails to plead a statute or regulation that confers a duty.* Siantou also attempts to plead a negligence claim based on allegations that AEIC violated various statutes and regulations. Such a claim would properly be brought under a theory of negligence per se.

"Negligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997) (citations omitted). Negligence per se liability requires a violation of a statutory duty and proximate cause. *Moughon v. Wolf,* 576 S.W.2d 603, 604 (Tex. 1978). A violation of a non-penal code statute does not establish a negligence per se claim. *Smith*, 940 S.W.2d at 607; *Ridgecrest Ret. & Healthcare v. Urban*, 135 S.W.3d 757, 762 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also My Clear View Windshield Repair, Inc. v. GEICO Advantage Ins. Co.*, No. 4:16-cv-02849-MH, 2017 WL 2591339, at *5 (S.D. Tex. 2017). "A 'penal statute' is one that defines a criminal offense and specifies a corresponding fine, penalty, or punishment." *Pack v. Crossroads, Inc.*, 53 S.W.3d 492,

22

509 (Tex. App.—Ft. Worth 2001, pet. denied); *see also My Clear View Windshield Repair, Inc.*, 2017 WL 2591339, at *5.

Siantou attempts to confer a duty on AEIC based on allegations that AEIC violated Texas Insurance Code § 551.052, the DTPA, as well as 12 C.F.R. § 1024.17(k) and 12 C.F.R. § 1026.38; *see* 3d Am. Compl. at 23, ¶ 8.05.01. Section 551.052 of the Texas Insurance Code is not penal in nature; it cannot be the basis for a negligence per se claim. *See* Tex. Ins. Code § 551.052; *see also My Clear View Windshield Repair, Inc.*, 2017 WL 2591339, at *5 ("The Texas Insurance Code section on which Plaintiffs rely for their negligence per se claim is not penal in nature.").

The Court need not address allegations premised on violations of the DTPA because the Court has already determined that Siantou fails to adequately allege a DTPA violation. Nonetheless, Texas Courts have held that the DTPA does not provide the basis for a negligence per se claim. *See Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("The DTPA facially does not establish an applicable standard of care for imposing liability based on negligence per se") (citing *Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995), "recognizing that Texas has no law creating common law cause of action for statutory violation for which violation there is express and comprehensive statutory cause of action").

And finally, the federal regulations Siantou relies on do not apply to AEIC. District courts in this District have held that "while citing to a particular statute when pleading a negligence per se claim is no doubt best practice, the failure to do so is not necessarily fatal." *Ordonez v. Ausby*, 3:21-cv-00077-DCG, 2023 WL 310442, at *9 (W.D. Tex. Jan. 18, 2023). But a plaintiff must "put[] forth factual allegations of particular conduct that unquestionably violates a statute or

regulation." *See Rivas v. Martinez*, 3:24-cv-00070-KC, 2024 WL 4206122, at *4 (W.D. Tex. Sep. 16, 2024) (citation omitted). And here, Siantou has failed to do so.

Section 1024.17 "sets out the requirements for an escrow account that a lender establishes in connection with a federally related mortgage loan." 12 C.F.R. § 1024.17(a). Particularly, subsection (k) requires that the lender make timely payments. *See* 12 C.F.R. § 1024.17(k). Moreover, § 1026.38 is titled "Content of disclosures for certain mortgage transactions (Closing Disclosure)." *See* 12 C.F.R. § 1026.38. AEIC was Siantou's homeowner's insurance provider. Siantou does not contend that AEIC is his mortgagee, seller, creditor, lender, or escrow servicer. While Siantou's lenders may be bound to these regulations, AEIC is not. Therefore, Siantou cannot plausibly allege that AEIC's conduct violated the cited regulations. Siantou has thus failed to allege a statute or regulation to confer a duty sufficient to plead a negligence per se claim.

Therefore, Siantou's claims for negligence, gross negligence, and negligence per se should be dismissed.

### F.    Claims For Invasion of Privacy Fail Because Siantou Pleads No Facts that Show AEIC's Actions Would Be Highly Offensive to a Reasonable Person.

Texas law recognizes several forms of invasion of privacy. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994). Siantou doesn't plead one specifically. But in light of Siantou's pro se status, the Court will consider two potential applicable invasion-of-privacy torts: public disclosure of private acts and intrusion upon solitude.

"To establish a claim for the tort of invasion of privacy based on the public disclosure of private facts, the plaintiff must show that (1) publicity was given to matters concerning his private life; (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized was not of legitimate public concern." *Lowe v. Hearst Comm., Inc.*, 487 F.3d 246, 250 (5th Cir. 2007) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d

471, 473-74 (Tex. 1995)). Moreover, to establish a claim for tort of invasion of privacy based on intrusion on their solitude, a plaintiff must establish that the defendant "(1) intentionally intrud[ed] (2) upon the solitude of another or his private affairs (3) which is highly offensive to a reasonable person." *Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 48 (Tex. App.—Corpus Christi 2001, no pet.) (citing *Gill v. Snow*, 644 S.W.2d 222, 223-24 (Tex. App.—Fort Worth 1982, no writ), *overruled on other grounds by Cain*, 878 S.W.2d 577)).

Siantou pleads that Defendant "unwarrantedly [ ] public[icized] matters concerning [his] private life . . . [by] repeatedly publish[ing] or caus[ing] to be published, reports of Plaintiff's alleged debt toward Defendant as being in collection." 3d Am. Compl. at 29, ¶¶ 8.08.03, 8.08.04. Credit reporting and sending outstanding debts to collections agencies, however, is "an act commonly performed by creditors to establish a debtor's credit history." *See Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 454 (Tex. App.—Dallas 2002, no pet.).

Siantou provides not factual allegations to support a claim that AEIC sending Siantou's outstanding premium payments to collections would be "highly offensive to a reasonable person"—an element required to establish both of the potentially applicable invasion-of-privacy torts. The Court recognizes that "oppressive treatment of a debtor, including the unreasonable giving of undue publicity to private debts," may be sufficient to allege a claim for invasion of privacy. *See Cunninham v. Sec. Inv. Co. of St. Louis*, 278 F.2d 600, 604 (5th Cir. 1960) (analyzing Louisiana jurisprudence). Moreover, constant and abusive debt collection calls can support a cause of action for invasion of privacy. *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 394 (5th Cir. 2001). But Siantou's Third Amended Complaint contains no pleaded facts that indicate AEIC engaged in any such oppressive or abusive treatment. Nor does he allege

25

that AEIC gave publicity to his debt outside of sending the debt to the collections agency. *See* 3d Am. Compl.

The Court concludes that AEIC didn't engage in conduct "highly offensive to a reasonably person" when it sent Siantou's outstanding debt to collections. Siantou's Third Amended Complaint fails to provide sufficient factual allegations to support an invasion-of-privacy claim based on either public disclosure of private facts or intrusion upon solitude.

Accordingly, Siantou's claim for invasion of privacy based on public disclosure of private facts or for intrusion upon solitude should be dismissed.

### Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED** that Defendant AEIC's Motion to Dismiss, Dkt. No. 21, be **GRANTED IN PART** and **DENIED IN PART**. A claim for breach of contract and promissory estoppel survives, as described herein. All other claims should be **DISMISSED**.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections

must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

**SIGNED** this 23rd day of February, 2026.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE